**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR10-822-PHX-DGC |
|---|---|
| Plaintiff, | **ORDER** |
| vs. | |
| Eitan Maximov, | |
| Defendant. | |

Defendant Eitan Maximov has filed a motion to dismiss the existing charges. Doc. 64. The motion is based on events that occurred in connection with the dismissal of an earlier case against Defendant Maximov. The motion has been fully briefed (Docs. 87, 95), and the Court heard oral argument on October 27, 2011. For the reasons that follow, the motion will be denied. The government has filed a motion to dismiss Count 4 of the indictment. Doc. 64. The motion will be granted and Count 4 will be dismissed with prejudice.

**I.  Background.**

Defendant Maximov originally was indicted in case CR08-368-PHX-DGC in April of 2008 (the "2008 Case"). The indictment charged Defendant and others with conspiracy to commit bank fraud, bank fraud, attempted bank fraud, money laundering, and transactional money laundering. *See* 2008 Case at Doc. 3. Defendant Maximov moved to have the case designated as complex. *See* 2008 Case at Doc. 44. Although the government sought an earlier trial date, the Court set a trial date of August 11, 2009 after

Defendant Maximov sought additional time to prepare. *See* 2008 Case at Doc. 79. During the course of the 2008 Case, Defendant Maximov changed counsel several times, including shortly before one of the scheduled trial dates. *See* 2008 Case at Docs. 54, 132, 137, 387.

On the day before trial was to begin, the government filed a motion to dismiss the charges against Defendant Maximov on the basis of misstatements made during the case agent's grand jury testimony. *See* 2008 Case at Doc. 539. At a hearing on December 8, 2009, the government explained that the case agent had given incorrect testimony to the grand jury about the landscaped condition of one of the properties and the reasons for a "cash back" arrangement, about the amount of money Defendant had in his bank account on a particular day, and about the identity of one of the lending institutions involved in the case. *See* 2008 Case at Doc. 547 at 8-9. The government stated there were some additional smaller inaccuracies in the grand jury testimony of the case agent. *Id.*

Defendant stated during the hearing on December 8, 2009 that he agreed with the government's motion to dismiss the indictment, whether with or without prejudice. Defendant requested an opportunity to brief the question of whether dismissal should be with prejudice. As a result, the Court ordered Defendant released from custody and set a briefing schedule to decide whether the dismissal should be with or without prejudice. *See* 2008 Case at Doc. 543.

Prior to this point in time, the Court had denied Defendant's request to reduce the bond amount set by the Magistrate Judge. *See* 2008 Case at Docs. 50, 62. As a result, Defendant had remained in custody throughout the 17-month history of the 2008 Case. The Court found the government's dismissal of the charges on the day before trial to be troubling in light of Defendant's extended incarceration. *See* 2008 Case at Doc. 550 at 4.

After receiving briefing from the parties, the Court concluded that the dismissal should be without prejudice. The Court noted the broad discretion afforded the government in prosecutorial decisions and the fact that courts generally should not

interfere with such discretion in the absence of bad faith or misconduct. *See* 2008 Case at Doc. 550. Because there was no evidence of government bad faith or misconduct, and because Defendant Maximov did not oppose the motion to dismiss even if it was without prejudice, the Court dismissed the remaining charges without prejudice. *Id.* The Court explained its reasons for finding an absence of bad faith as follows:

> The Court inquired closely concerning the government's reasons for seeking dismissal on the eve of trial. The prosecutor explained that while preparing for trial only days earlier, he discovered discrepancies between the testimony an FBI agent would give at trial and the testimony she gave to the grand jury that indicted Defendant Maximov. Although the prosecutor did not consider the discrepancies to be material, he was concerned they may have influenced the grand jury's decision to indict. To avoid any unfairness to Defendant Maximov, the prosecutor – who was not the prosecutor who presented the case to the grand jury – decided the indictment should be dismissed. The prosecutor emphasized that he was not seeking dismissal because the government was unprepared for trial. To the contrary, the government was prepared to go forward on December 8, 2009, and believed it had sufficient evidence to prove Defendant Maximov's guilt beyond a reasonable doubt.
>
> Counsel for Defendant Maximov did not disagree with the prosecutor's reasons for dismissing the indictment, and, as noted, supported the government's motion even if the dismissal ultimately was held to be without prejudice. At the hearing, counsel for Defendant Maximov said: "I'm not claiming that there was any misconduct under Rule 48[.]" In his memorandum filed after the December 8 hearing, counsel for Defendant Maximov stated: "At this point, the defendant, Eitan Maximov, is not claiming that the dismissal of the remaining counts in the indictment by the government is 'clearly contrary to the manifest public interests' or was made in 'bad faith.'"

*Id.* at 3-4 (citations omitted).

## II. Defendant's Current Bad Faith Argument.

Defendant Maximov now asks the Court to reconsider its decision in the 2008 Case dismissing the charges without prejudice. Through new counsel, Defendant

- 3 -

Maximov argues that the government failed to disclose all of the discrepancies in the case when it sought dismissal in December 2009. Defendant Maximov suggests that the Court may have found bad faith had full disclosure been made. Alternatively, Defendant Maximov seems to argue that the government's failure to make full disclosure December of 2009 itself constitutes an act of bad faith that justifies dismissal of the 2008 Case and this case with prejudice.

Defendant Maximov argues that, with one exception, the FBI agent in the 2008 Case failed to present evidence to the grand jury that the financial institutions at issue in the bank fraud counts were federally insured. Defendant notes that federal insurance is an element of the bank fraud charge, that failure to present evidence of federal insurance therefore resulted in a fatally flawed indictment, and that the government should have disclosed this fact when it sought dismissal of the 2008 Case in December of 2009. Docs. 64, 95.

The Court cannot conclude that it would have dismissed the 2008 Case with prejudice had these facts been disclosed in December of 2009. The government had already come forward and disclosed errors in the FBI agent's testimony before the grand jury. The government had noted that the grand jury might not have indicted Defendant Maximov had accurate information been presented. *See* 2008 Case at Doc. 64 at 8. ("[W]hen you look at the number of inaccuracies cumulatively, we believe that the items may have affected whether the grand jury fairly heard the defendants' matter and that's what caused us some concern.").

Had counsel for the government disclosed in December of 2009 that the FBI agent also failed to present grand jury testimony that the financial institutions involved in the bank fraud counts were federally insured, the Court likely would have found this to be one additional reason supporting the government's decision to dismiss the indictment. The Court would not have had before it then, and does not have before it now, any basis for concluding that the government intentionally withheld this information from the

grand jury in order to obtain an invalid Indictment.

As the parties have noted in their current briefing, there has been some uncertainty in the law concerning the FDIC-insured element of a bank fraud claim. The bank fraud statute prohibits defrauding a "financial institution" or obtaining funds or property "owned by, or under the custody or control of, a financial institution" by means of fraud. 18 U.S.C. § 1344. Before September 2010, the law was unsettled on the question of whether a non-federally insured subsidiary of a federally-insured lending institution qualified as "owned by, or under the custody or control of, a financial institution." In *United States v. Bennett*, 621 F.3d 1131 (9th Cir. 2010), the Ninth Circuit recognized that other courts have held that a subsidiary's relationship with an FDIC-insured parent may alone be sufficient to fulfill the "financial institution" element of the bank fraud statute. *Id*. at 1138-39 (citing *United States v. Cartwright*, 632 F.2d 1290, 1292 (5th Cir. 1980), and *United States v. White*, 882 F.2d 250, 253 (7th Cir. 1989)). The Ninth Circuit disagreed with that authority and held in *Bennett* that the parent-subsidiary relationship alone does not satisfy the "owned by a financial institution" prong of the definition. The court left open the question of whether additional evidence may prove that a subsidiary is owned by a financial institution or "under the custody or control" of a parent FDIC-insured lender. 621 F.3d at 1138-39.

At the time of the indictment in the 2008 Case, the government reasonably could have concluded that a subsidiary of an FDIC-insured parent satisfied the FDIC-insured element of the bank fraud statute. Defendant does not disagree with the government's assertion that various lenders at issue in the 2008 Case were subsidiaries of FDIC-insured parents. Thus, Defendant has provided no basis upon which the Court can conclude that the government knew, when it secured the indictment in the 2008 Case, that the lending institutions could not satisfy the FDIC-insured element of the bank fraud statute.

In the absence of some basis for concluding that the government acted in bad faith in securing the original indictment, the Court cannot conclude that disclosures in

December of 2009 regarding the absence of FDIC-insurance evidence before the grand jury would have demonstrated bad faith sufficient to dismiss the 2008 Case with prejudice. Rather, as noted above, the Court likely would have concluded that the absence of FDIC-insurance evidence before the grand jury provided one more good reason for the government's request to dismiss the indictment.

Nor can the Court conclude that the government's failure to disclose this additional information in December 2009 itself constitutes an act of bad faith. The prosecutor who moved to dismiss the charges in December 2009 was different from the prosecutor who presented the evidence to the grand jury. Defendant provides no basis upon which the Court can conclude that the prosecutor in December 2009 intentionally withheld information about the absence of FDIC-insurance information before the grand jury at the time of the 2008 indictment.

When the government seeks dismissal of an indictment under Rule 48(a), as it did in the 2008 Case, the government is entitled to a "presumption of good faith." *United States v. Welbourne*, 849 F.2d 980, 984 (5th Cir. 1988); *see United States v. Garcia-Valenzuela*, 232 F.3d 1003, 1007 (9th Cir. 2000) (a "'presumption of regularity supports . . . prosecutorial decisions'") (quoting *United States v. Armstrong*, 517 U.S. 456, 464 (1996)). Defendant has not overcome this presumption. As noted, Defendant has presented no evidence that the government intentionally sought to obtain an invalid indictment in the 2008 Case or intentionally withheld information about the grand jury testimony in the December 2009 hearing that led to dismissal of the 2008 Case. Although it does appear that evidence before the grand jury in the 2008 Case was deficient on the issue of FDIC-insurance, that case was dismissed at the government's request. Defendant does not contend that the grand jury evidence in this case was similarly flawed.

### III. Unreasonable Delay.

When it dismissed the 2008 Case, the Court concluded that the government had not engaged in unreasonable delay:

> Defendant Maximov argues in his memorandum that the Court should dismiss the indictment with prejudice under Rule 48(b) and its supervisory powers. Rule 48(b) allows the Court to dismiss an indictment in the event of unnecessary delay. The Court did not dismiss the indictment in this case under Rule 48(b), and no party has claimed that this case has been delayed unnecessarily. To the contrary, the Court and the parties have sought diligently to prepare this case for trial, a challenging task given the complexity of the case and Defendant's use of five different defense attorneys.

*See* 2008 Case at Doc. 550 at 5 (citations omitted).

Given this conclusion, dismissal of the present case for unnecessary delay would be warranted only on the basis of the six months the government took to indict Defendant after the 2008 Case was dismissed, and the fact that the government then waited for Defendant to re-enter the United States before arresting him. The Court cannot conclude that a period of six months to re-indict a Defendant is unreasonably long. Nor can the Court conclude that the five months between issuance of the indictment and arrest of Defendant upon his return to the United States constituted unreasonably delay.

Defendant was out of the country until November 16, 2010. Defendant argues that the government could have sought to extradite him from Israel, but presents no evidence concerning the length of time for such a procedure. Nor does Defendant present evidence that the government engages in unnecessary delay when it waits for a non-resident to return to the country rather than actively seeking to extradite the non-resident.

In short, the Court cannot conclude that the time which elapsed from dismissal of the 2008 Case to Defendant's arrest in this case constituted unreasonable delay warranting dismissal of the present charges.

**IV. Count 4.**

The government has moved to dismiss Count 4 of the current indictment. Doc. 59. The government seeks to dismiss this claim because, after *Bennett*, the government would be required to prove that the wholly-owned subsidiary that lent money to Defendant was owned by or under the custody or control of an FDIC-insured financial institution. Rather than engaging in the effort to support this position, the government has chosen to dismiss Count 4 in the interest of streamlining the trial.

As an alternative to dismissal of the entire indictment, Defendant asks that the Court dismiss Count 4 with prejudice. The Court will grant this request. Dismissing Count 4 without prejudice, and thereby creating the prospect that the government could seek to indict Defendant for a third time on that charge, presents the prospect of "prosecutorial harassment by subjecting a defendant to 'charging, dismissing, and recharging.'" *United States v. Wallace,* 848 F.2d 1464, 1468 (9th Cir. 1998) (quoting *Renaldi v. United States*, 434 U.S. 22, 29 n. 15. (1977)). Given the extended history of this case, the Court cannot in good conscience permit the government to dismiss the charges for a second time shortly before trial without prejudice, and thereby preserve the possibility of a third indictment. Count 4 will be dismissed with prejudice.

**IT IS ORDERED:**

1. Defendant Maximov's Motion to Dismiss Indictment; Motion to Dismiss Bank Fraud and Incorporated Allegations from Count 1 Re: Count 4 (Doc. 64) is **denied in part and granted in part**. The motion is denied with respect to Defendant's request that the Court dismiss the entire indictment in this case with prejudice, but granted with respect to Count 4.

2. The government's Motion to Dismiss Count 4 (Doc. 59) is **granted**. Count 4 is dismissed with prejudice. Paragraph 30 of the indictment, which incorporates Count 4 by reference, is also dismissed with prejudice.

Excludable delay pursuant to U.S.C. § 18:3161(h)(1)(D) is found to commence on

1  _____ for a total of ____ days.
2      Dated this 31st day of October, 2011.

*David G. Campbell*
David G. Campbell
United States District Judge